IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**WEIRTON AREA WATER BOARD** and
**CITY OF WEIRTON, WEST VIRGINIA,**

Plaintiffs,

v.

**CIVIL ACTION NO. 5:25-CV-126**
Judge Bailey

**HERITAGE THERMAL SERVICES, INC.,** *et al.,*

Defendants.

## ORDER

Pending before this Court is Defendant Chrome Deposit Corporation's ("Chrome Deposit") Motion to Dismiss Plaintiffs' Complaint, [Doc. 108] and Memorandum in Support [Doc. 109], filed October 9, 2025. After this Court granted these parties' Joint Motion to Extend Deadlines [Docs. 122 & 126], plaintiffs filed their Response on November 13, 2026. [Doc. 164]. Chrome Deposit filed its Reply on December 4, 2025. [Doc. 171]. Accordingly, the Motion to Dismiss is now ripe for adjudication. For the reasons that follow, the Motion **[Doc. 108]** is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE** as to defendant Chrome Deposit. Chrome Deposit's alternative Motion for More Definite statement is **DENIED AS MOOT**.

Further, for the reasons discussed herein, this Court will **GRANT** the Motions to Dismiss of defendants Ergon-West Virginia, Inc. ("Ergon") **[Doc. 116]**; Illinois Tool Works, Inc. ("ITW") **[Doc. 129]**; Sonoco Products Company/ Ball Corporation ("Sonoco/Ball") **[Doc.**

1

**186];**[1] and will **GRANT** defendant Messer LLC's Motion for Judgment on the Pleadings [**Doc. 188**]. The Complaint is also **DISMISSED WITHOUT PREJUDICE** as to these defendants.

Also pending is defendant Seaforth Mineral & Ore Company, Inc.'s Motion to Dismiss [**Doc. 154**], which will be **DENIED AS MOOT**.

## BACKGROUND

Plaintiffs are the City of Weirton, West Virginia and the Weirton Area Water Board, who together own and operate a public water system serving Hancock and Brooke Counties. *See* [Doc. 1 at ¶¶ 1, 10–13]. Plaintiffs' water treatment plant is located in Brooke County, and sources its water from an intake in the Ohio River and a well near the Ohio River located in Brooke County (collectively referred to as the "Water Sources." [Id. at ¶ 2]. After collection and treatment, plaintiffs then provide this water to as drinking water to customers. [Id.].

This case concerns alleged pollution of the City of Weirton's water supply. *See generally* [id.]. Specifically, plaintiffs allege that the defendants, through various means, acts, and/or omissions, have caused or contributed to the existence of per– and polyfluoroalkyl ("PFAS") substances in Weirton's drinking water, which plaintiffs have been forced to remediate. [Id. at ¶¶ 3–4].[2] Plaintiffs assert claims for common-law nuisance, as well as statutory claims pursuant to the Comprehensive Environmental Response,

---

[1]Defendants Sonoco/Ball also included an alternative Motion for More Definite Statement in their Motion to Dismiss. This portion of their Motion is **DENIED AS MOOT**.

[2]Plaintiffs allege that certain PFAS substances have been determined to be harmful to both the environment and human health. *See* [Doc. 1 at ¶¶ 191–198].

Compensation, and Liability Act ("CERCLA").  *See generally* [id.].  Of particular concern to plaintiffs, and of particular relevance to this Order, are two (2) types of PFAS that have been discovered in Weirton's water: perfluoroctane sulfonic acid ("PFOS") and perflurooctanoic acid ("PFOA"), which have been designated as "hazardous substances" under CERCLA.  [Id. at ¶ 198].

Defendant Chrome Deposit, per the Complaint, is an Indiana company with a principal place of business in Indiana. [Doc. 1 at ¶ 30].  Additionally, Chrome Deposit is alleged to own and/or operate a facility in Weirton, West Virginia ("Chrome Facility"), and, at the time relevant to the Complaint, this defendant "engaged in the chrome plating of rolls used in the steel industry and electro-discharge texturing." [Id. at ¶ 33].  With respect to the Chrome Facility's operations and their relation to plaintiffs' claims, the plaintiffs allege:

34. Upon information and belief, the Chrome Deposit Facility utilized materials containing PFAS in order to add resistance to wear and corrosion, and to impart heat tolerance, lubricity, conductivity, and certain aesthetic properties to the products and services it provided. This is consistent with the utilization across various industries that utilized PFAS as wetting agents, fume suppressants, dispersion products, coating additives, corrosion inhibitors, and/or to achieve certain product attributes.

35. The chrome plating industry has received considerable regulatory and scientific attention as a source of PFAS in the environment, since PFAS have been used for decades as agents to suppress emissions of hexavalent chromium, a known carcinogen. Source identification

3

studies conducted by the EPA and state agencies have concluded that the metal finishing industry represents a significant source of PFAS emissions, and that within the metal finishing industry, facilities performing chrome plating and associated operations represent the dominant sources.

36.    Upon information and belief, the Chrome Deposit Facility was located within the groundwater protection area for Plaintiffs' Water Sources and as a direct and proximate result of Chrome Deposit's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

[Id. at ¶¶ 34–36].

Defendant Chrome Deposit now brings this Motion in response to the Complaint, contending that the Complaint "fail[s] to state viable CERCLA[3] or common law claims" because it "does not contain any facts to connect Chrome Deposit to the alleged PFAS contamination in Weirton, West Virginia. As such, the allegations against Chrome Deposit amount to legal conclusions and are subject to dismissal under controlling case authorities." [Doc. 108 at 1–2].

Alternatively, Chrome Deposit asks this Court to order plaintiffs to submit a more definite statement because "Chrome Deposit cannot properly investigate and respond to

---

[3]Comprehensive Environmental Response, Compensation, and Liability Act. *See* 42 U.S.C. § 9601 *et seq.*

Plaintiffs' claims without additional details regarding the alleged release event." [Id. at 2]; Fed. R. Civ. P. 12(e).

## STANDARD OF REVIEW

### I.      Rule 12(b)(6)

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007); *see also* **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008) (applying the **Twombly** standard and emphasizing the necessity of plausibility).   When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995) (*cert. granted*, **Anheuser-Busch, Inc. v. Schmoke**, 517 U.S. 1206 (1996)).  In **Twombly**, the Supreme Court noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." **Twombly**, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 motion." *Williams v. Branker*, 462 Fed.App'x. 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 Fed.App'x. 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id.* at 396–97.[4]

## DISCUSSION

### I.   Plaintiffs' CERCLA claims are insufficiently plead to state a claim upon which relief can be granted.

CERCLA establishes strict liability; a successful CERCLA claim requires five (5) elements to be met: "(1) the defendant is a potentially responsible person ("PRP"); (2) the site constitutes a 'facility'; (3) a 'release' or a threatened release of hazardous substances exists at the 'facility'; (4) the plaintiff has incurred costs responding to the release or threatened release of hazardous substances ('response costs'); and (5) the response costs conform to the National Contingency Plan." *PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 167–168 (4th Cir. 2013) (citing 42 U.S.C. §§ 9601(9), (22), 9607(a); *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 356 (2d Cir.1997)).

CERCLA "does not require a plaintiff to show that a particular defendant caused either the release or the incurrence of response costs in order to prove liability."

---

[4]Because this Court is denying the pending Motions for a More Definite Statement as moot, a recitation of the standards applicable to Rule 12(e) of the Federal Rules of Civil Procedure is unnecessary.

*Kalamazoo River Study Grp. v. Menasha Corp.*, 228 F.3d 648, 655 (6th Cir. 2000). Instead, "[t]he plaintiff must prove only that contaminants which were once in the custody of the defendant could have travelled onto the plaintiff's land, and that subsequent contaminants (chemically similar to the contaminants once existing in defendant's custody) on the plaintiff's land caused the plaintiff to incur cleanup costs." *Westfarm Assocs. Ltd. P'ship v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669, 681 (4th Cir. 1995) (citations omitted).

At the heart of Chrome Deposit's argument is that plaintiffs "draw no causal link between their alleged PFAS problem and Chrome Deposit's conduct. For example, they do not explain when the alleged release took place or how the PFAS migrated from Chrome Deposit's facility to Plaintiffs' water supply, or which of the literally thousands of 'PFAS' compounds were allegedly used or released, all but two of which are not regulated CERCLA hazardous substances." [Doc. 109 at 2].

Accordingly, Chrome Deposit challenges the sufficiency of plaintiffs' CERCLA claims on causation grounds—the third element above. Plaintiffs' CERCLA claims are somewhat unique in that they only relate to the presence of PFOA and PFOS in Weirton's water supply, not the other PFAS substances referenced in the Complaint. This is because only PFOA and PFOS are classified as "hazardous substances" under CERCLA. *See* [Doc. 1 at ¶ 211]. To this point, Chrome Deposit argues that "Plaintiffs *do not* specify whether Chrome Deposit ever utilized PFOA or PFOS—the specific compounds which are the subject of Plaintiffs' CERCLA claim." [Doc. 109 at 3 (citing [Doc. 1 at ¶¶ 1, 30–36, 211)] (emphasis in original).

Specifically, Chrome Deposit contends that plaintiffs have failed to allege a "mechanism of 'release,'" which is a prerequisite to a CERCLA claim. [Doc. 109 at 3]. "Instead, Plaintiffs list generic 'pathways' that apply to all environmental sites, leaving this fundamental element to the Defendants' interpretation." [Id. at 3–4 (citing [Doc. 1 at ¶ 203])]. "Plaintiffs rely on universal allegations to tie all Defendants to the handling of all PFAS compounds ... But this type of allegation does not substantiate a CERCLA claim because it does not delineate between the CERCLA-eligible PFAS compounds and the CERCLA-ineligible PFAS compounds." [Doc. 109 at 8 (citation omitted)].

Plaintiffs, meanwhile, counter that relaxed causation standards under CERCLA render their allegations against Chrome Deposit sufficient. [Doc. 164 at 9 ("Chrome Deposit's argument fails because there is no traditional tort causation requirement for cost recovery claims brought under CERCLA. . . .")]; [id. at 10 (citing *Lovejoy v. Amcox Oil & Gas, LLC,* 2022 WL 17566235, at *6 (S.D. W. Va. Dec. 9, 2022) (Goodwin, J.)) (other citations omitted)]. Plaintiffs argue that the Complaint sufficiently alleges a "release" of PFOS and PFOA by Chrome Deposit, which brings their claim within the ambit of CERCLA. [Id. at 11–12].

Here, the key factor to this Court's decision is that the Complaint plainly fails to specify that Chrome Deposit ever even used PFOS or PFOA in its operations. Therefore, although plaintiffs allege that PFOS and PFOA are present in their water supply, and even in spite of CERCLA's relaxed causation approach, the Complaint fails to make the requisite *prima facie* connection between Chrome Deposit's operations and plaintiffs' alleged injury, which this Court believes is fatal to plaintiffs' CERCLA claims.

In their Response, plaintiffs contend that "Weirton's Complaint alleges that as part of the company's chrome plating operations at the Chrome Deposit Facility, Chrome Deposit released PFAS, **including PFOS and PFOA**, into the soil, air, and water located within the groundwater protection area for Weirton's Water Sources, which then migrated to contaminate those Water Sources." [Doc. 164 at 4 (citing [Doc. 1 at ¶¶ 34–36,[5] 199, 203, 211–12]) (emphasis added)].   That is not what the Complaint says.   Critically, those paragraphs of the Complaint state as follows:

199.   As a result of **Defendants'** tortious actions, omissions, and conduct in the use, release, storage, handling, and/or disposal of **PFAS** and **PFAS** containing materials at, near, or within the vicinity of the groundwater protection area for Plaintiffs' Water Sources, **PFAS** has been caused to migrate into and exist in Plaintiffs' Water Sources and property, thereby damaging and injuring Plaintiffs.

***

203.   **PFAS** were and are released from **Defendants'** facilities via several pathways. These pathways include wastewater discharge, with **PFAS** contaminated wastewater discharged directly into waterways; solid waste, and PFAS contaminated solid waste and/or sludge leaching into groundwater and surface water; air emissions, with **PFAS** released during the manufacturing processes and depositing on soils and water via atmospheric deposition; surface runoff, where **PFAS**

---

[5]*See* pages 2–3, *supra*, for paragraphs 34–36.

contaminants on the ground get picked up via rainfall or snowmelt and flow to surface waters or migrate to groundwater

\*\*\*

211.    PFOA and PFOS are each a "hazardous substance" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), by designation pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602.

212.    There has been a release, and/or continue to be releases, and/or disposal of **hazardous substances** from each **Defendants'** facility within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

[Doc. 1 at ¶¶ 199, 203, 211–12 (emphasis added)].

Despite plaintiffs' contentions within their Response, and as Chrome Deposit points out in its Reply, notably absent from any of the above allegations is the assertion that defendant Chrome Deposit, specifically, utilized PFOS or PFOA in its operations. *See* [Doc. 171 at 3]. Although plaintiffs are correct that they are permitted to plead by "inference" elements such as the "pathway" of contamination or the exact origin of a particular substance, there must nevertheless be at least *some* basis for causation. *See* **Lovejoy**, 2022 WL 17566235, at \*6 (citing **Artesian Water Co. v. Gov't of New Castle Cnty.**, 659 F. Supp. 1269, 1269 (D. Del. 1987), *aff'd*, 851 F.2d 643 (3d Cir. 1988) ("recognizing the difficulties of proof throughout the CERCLA framework, courts have extended this generosity of inference to the plaintiff's burden of showing the defendant's custody over contaminants.")).

10

*Lovejoy* is readily distinguishable from the case at bar.  In *Lovejoy*,[6] the plaintiff asserted a CERCLA claim against the owner of a natural gas pipeline facility located on her property. *Id.* at *1.  The plaintiff alleged that Bis(2-ethylhexyl)phthalate ("DEHP") was being leaked into the groundwater and soil on her property from the facility. *Id.*  To support her claims, the plaintiff had an expert, Dr. Simonton, examine the facility and perform testing that confirmed the presence of contaminants. *Id.*  Critically, Dr. Simonton also ruled out other possible sources of the contamination in two (2) ways: (1) he confirmed there had been no other industrial operations on the property; and (2) he cited publications which demonstrated that some of the contaminants had been previously found in studies of oil and gas processes. *Id.*

Accordingly, *Lovejoy* differs from the instant case because there was at least some factual basis to believe that the contaminants at issue could have originated from the gas pipeline facility.  Here, in contrast, plaintiffs have not even alleged that PFOS or PFOA were used at the Chrome Deposit Facility.

In other words, the "inference" afforded to CERCLA plaintiffs is the "how" of contamination; it does not, however, obviate the threshold requirement that a defendant actually handle or otherwise use the hazardous material in some way. "Although courts have rejected the requirement that the plaintiff show actual contamination of its property by defendant's waste in order to establish liability under CERCLA, ... *this rejection does not include the requirement that the plaintiff demonstrate that the defendant has deposited*

---

[6]The Court also notes that *Lovejoy* was decided at the summary judgment, not the pleading, stage, and therefore considered the available evidence, not the legal sufficiency of the plaintiff's pleadings. *Id.* at *1.

11

*hazardous waste.*" ***White v. Cnty. of Newberry, South Carolina***, 985 F.2d 168, 174 (4th Cir. 1993) (citation omitted; emphasis added). In other words, a CERCLA plaintiff need not allege in detail how a contaminant traveled from a defendant's facility to the plaintiff's property, but a plaintiff must provide at least *some* basis for attributing the particular contamination that has occurred—here, PFOS and PFOA—to the defendant.

Accordingly, even accepting the premise that plaintiffs need not allege that a particular defendant caused the release of the hazardous substance, plaintiffs still have not alleged that Chrome Deposit even *used* the alleged hazardous materials. This begs the fundamental question: how could Chrome Deposit have caused a "release" where it is not clear that it used PFOS or PFOA in the first place? Accordingly, plaintiffs are asking for more than mere "inference" as to the cause of their PFOS/PFOA contamination.

While the causation requirement in CERCLA cases may be relaxed, this Court does not believe that Congress intended the standard to be stretched quite that far. In Chrome Deposit's words, "[b]ecause of their widespread use and persistence in the environment, many PFAS are present at low levels in the environment. But that is not enough to bring a claim here. Under Plaintiffs' logic, every company that touches the Ohio river and rests upstream of Weirton could be held liable in this case." [Doc. 171 at 4 at 4 (footnote omitted)].

On one hand, it makes sense not to hold a plaintiff to strict standards of causation where multiple defendants could be responsible for the same injury.

However, on the other hand, it would make little sense to expose a defendant to potential CERCLA liability when the defendant's operations did not even involve the

12

hazardous substances that are at issue.  In other words, there cannot be a "release" if the plaintiff cannot plausibly allege that the defendant even used the hazardous substances in the first place.  This is in accord with the rule set forth in **Westfarm**—although plaintiffs do not bear the burden of proof on causation in CERCLA cases, here they have failed to allege that the hazardous substances at issue were ever "in the control of the defendant" or that the defendant "deposited" the hazardous substance.  **Westfarm**, 66 F.3d at 681; *see also* **White**, 985 F.2d 168, 174 (finding that because plaintiffs had not shown that contaminants were ever located on defendant County's land, grant of summary judgment in favor of County on CERCLA claim was proper).  "A CERCLA plaintiff need not prove that contaminants on her property actually migrated from the defendant's property, but she must 'demonstrate that the defendant has deposited hazardous waste.'" **Lovejoy**, 2022 WL 17566235, at *4 (S.D. W.Va. Dec. 9, 2022) (Goodwin, J.) (quoting **White**, 985 F.2d at 174).  In short, although plaintiffs do not need to definitively show, at this stage, that the PFOS/PFOA in their water originated from Chrome Deposit's operations (as opposed to another possible source), they must, at a minimum, sufficiently allege that these substances *could* have originated from the Chrome Facility.  Plaintiffs have not done so here.

For the reasons set forth above, this Court finds that plaintiffs' CERCLA claims against Chrome Deposit (Counts I and II of the Complaint) fail as a matter of law and are therefore **DISMISSED WITHOUT PREJUDICE**.

## II.    Motion for More Definite Statement

In light of this Court's above ruling, Chrome Deposit's alternative Motion for More Definite Statement is **DENIED AS MOOT**.

## III.    Other Pending Motions

Also pending before this Court are Motions to Dismiss filed by defendants Ergon-West Virginia, Inc. ("Ergon") [Doc. 116]; Illinois Tool Works, Inc. ("ITW") [Doc. 129]; Sonoco Products Company / Ball Corporation ("Sonoco/Ball") [Doc. 186]; as well as a Motion for Judgment on the Pleadings by defendant Messer LLC ("Messer") [Doc. 189].

Upon review of the briefing related to these Motions, it appears to this Court that they present virtually the same causation issue as discussed within this Order. *See, e.g.*, [Doc. 176 at 13 ("Ergon does not contend that Plaintiffs fail to distinguish between Ergon's and others' hazardous releases.  Rather, Ergon contends that Plaintiffs do not allege **any** hazardous material release by Ergon." (Emphasis in original)]; [Doc. 130 at 4 ("The Complaint does not identify a **single** instance of PFAS being released or migrating into Plaintiffs' water sources as a result of ITW's business operations ... The Complaint does not even identify the particular PFAS that ITW supposedly used.") (emphasis in original)]; [Doc. 203 at 4 ("Plaintiffs, however, fail to acknowledge there are no allegations in the Complaint that the relevant PFAS used at or discharged from the Messer Facility included PFOS or PFOA.")]; [Doc. 186-1 at 3 (". . . . the Complaint fails to state which of the many thousands of PFAS substances are alleged to be in the Plaintiffs' water supply and whether any of those variants were used by Ball in its operations, if any, and much less at the subject facility.")].Therefore, in the interest of expediency and judicial economy,

14

this Court will also address these Motions here, as the analysis just provided with respect to Chrome Deposit's Motion to Dismiss likewise informs this Court's analysis with regard to the other pending Motions.

This Court notes that plaintiffs do not, with regard to any of the aforementioned defendants, specifically allege that these defendants utilized PFOS or PFOA in their operations; plaintiffs merely allege that PFOS and PFOA have been discovered in their water supply. *See* [Doc. 1 at ¶ 201]. Just as was the case with defendant Chrome Deposit, therefore, plaintiffs' Complaint fails to state a CERCLA claim against these other defendants, as PFOS and PFOA are the only materials currently designated as "hazardous substances" under CERCLA.

At best, the Complaint generally alleges that "there has been a release, and/or continue to be releases, and/or disposal of hazardous substances from each Defendants' facility within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22)." [Doc. 1 at ¶ 212]. This allegation is plainly a legal conclusion and lacking in the specificity required to assert a plausible claim for relief—even a CERCLA claim with relaxed causation standards. Additionally, Paragraph 212 uses the term "hazardous substances"—*not* PFOS or PFOA, specifically. The Complaint does not allege the presence of any other hazardous substance present in its water other than PFOA or PFOS, nor does it allege that any defendant utilized another hazardous substance in its operations. For example, as defendant Messer articulated:

> Plaintiffs allege only that "hazardous substances" were released but fail to assert that PFOS and PFOA are the relevant hazardous substances released fron the Messer Facility. [Doc. 1 at ¶¶ 210–213]. In other words,

even assuming *arguendo* that Messer used one or more of the nearly 15,000 thousand [sic] unique PFAS and discharged one or more hazardous substances at from [sic] its facility, Plaintiffs' CERCLA claims still fail because there is no allegation that the hazardous substance discharged from Messer's Facility were PFOS or PFOA, a necessary element under CERCLA, and not one of the roughly 800 other different hazardous substances listed under CERCLA. See 40 C.F.R. § 302.4 (listing hazardous substances).

[Doc. 203 at 5].

This Court also believes it is necessary to distinguish the instant case from its prior rulings involving PFAS-related claims previously made by the plaintiffs. *See e.g.*, *Weirton Area Water Bd. v. 3M Co.*, 2020 WL 7479973 (Dec. 18, 2020) (Bailey, J.) ("*Weirton I*").

First and foremost, the action in *Weirton I* was based on diversity jurisdiction and the Complaint did not contain a CERCLA claim. *See id.* at *1–2 (explaining case was removed from state court and listing seven (7) state law counts in the Complaint). Accordingly, allegations concerning PFOS and PFOA were not integral to the claims asserted in *Weirton I*. Moreover, in *Weirton I*, this Court "[found] that the Complaint sufficiently alleges that [defendant's] plant discharged **PFAS**," not PFOA or PFOH specifically. *Id.* at *3 (emphasis added).

Second, plaintiffs read this Court's holding in *Weirton I* too broadly. In *Weirton I*, this Court held that "[plaintiffs] are not required, at [the pleading] stage, to specifically identify the products containing PFAS used by this defendant or the details of the

16

operations in which these chemicals were released, which are within the unique knowledge of the defendant." *Weirton I*, 2020 WL 7479973 at * 6.  As plaintiffs recognize, however, their claims in *Weirton I* were against "certain manufacturers of PFAS and PFAS-containing products." [Doc. 170 at 16].  This holding must therefore be understood relevant to its particular factual context.

While this Court held that the plaintiffs in *Weirton I* were not required to identify the specific *products* made by defendants that contained PFAS, this Court did not hold that plaintiffs were not required to plausibly allege the presence of PFAS at a defendant's facility.  For example, if a manufacturing defendant were to make 10 different kinds of widgets, a plaintiff would not be required to identify which of the 10 widgets actually contained the PFAS or to detail which part of the process caused the PFAS to be released.

As such, Court's holding in *Weirton I* should not be expanded, as plaintiffs attempt to do so here, to stand for the premise that it is not necessary to plausibly allege that *at least some* of a defendant's operations or products utilize or contain the contaminants at issue.  If plaintiffs lack a factual basis to allege that a defendant's facility even used PFOA or PFOS, then it can hardly be said that they have asserted a plausible CERCLA claim against that defendant.

In so holding, this Court rejects the broader interpretation of CERCLA causation that appears to have been adopted in *Hobart Corp. v. Dayton Power & Light Co.*, 997 F. Supp. 2d 835, 852 (S.D. Ohio 2014), wherein the Court held that "Plaintiffs need not identify exactly which hazardous substances were released by which defendants, in what manner, or on what specific dates."  Even in the case that the *Hobart* Court cited in

support of its holding, **Kalamazoo River Study Group v. Menasha Corp.**, the **Kalamazoo** Court still held that a plaintiff must prove "that the *defendant's* hazardous substances were deposited at the site from which there was a release and that the release caused the incurrence of response costs." **Hobart**, 997 F.Supp.2d at 852 (quoting **Kalamazoo River Study Group v. Menasha Corp**, 228 F.3d 648, 655 (6th Cir. 2000) (internal quotation and citation omitted; emphasis added).

In this Court's view, plaintiffs are not required to specify as to the "how" or "when" of a release, but they must, at a minimum, provide the basic "what." They have not done so here. *See e.g.,* [Doc. 198 at 2 ("Absent any specific allegation of the use of PFOS and PFOA at the Ball Facility, Weirton cannot establish a necessary element of a CERCLA claim.")]. If there is no basis that PFOA or PFOA were used, it is unclear to this Court how a "release" could have occurred in the first place. Put differently, the issue presented by this case is not a matter of sorting out *which* defendant's release caused the contamination, but whether there was a "release," as that term is understood under CERCLA, *at all*.

At bottom, this Court cannot, in the interest of fairness, permit the moving defendants to be subjected to the expense and burden of what is likely to be costly discovery without at least some preliminary indication that the defendants' operations involved the **only** two (2) specific substances that can actually give rise to CERCLA liability.

As explained previously in this Order, if all defendants were alleged to have used PFOS or PFOA in their operations and the only unknown factors were the pathway from a defendant's operations to the water supply (i.e., *how* and *when* the PFOS/PFOA got into plaintiffs' water) or which particular defendant the PFOS/PFOA came from, the outcome

18

of these Motions may have been a different story.  From the face of the Complaint, however, there is no basis for CERCLA liability because it is not clear that any of the moving defendants actually used PFOS or PFOA at all.  Ultimately, this Court believes this holding is consistent with the Fourth Circuit's holding in **White**, where it upheld the dismissal of a CERCLA claim against the County defendant where the plaintiffs "produced no direct evidence that the County has done anything that involved TCE,"[7] **White**, 985 F.2d at 174.

As discussed above, there is no basis for CERCLA liability unless the plaintiffs can sufficiently allege that these hazardous substances were within the control of these defendants and deposited by them. The Complaint, as it currently stands, does not do so.

All the above said, this Order should not be construed as imposing a strenuous pleading burden on plaintiffs.  As the case law discussed herein indicates, CERCLA did not intend to place unduly burdensome obstacles in the path of victims of contamination who are seeking to recover cleanup costs.  This Court's Order was based on the plain absence of any direct allegation that any of these defendants utilized PFOS or PFOH in their operations, which, in this Court's view, even CERCLA's generous causation standards cannot rehabilitate.  This is not to say, however, that plaintiffs would be required to assert detailed allegations concerning each defendant's operations, or that allegations made upon information and belief would be insufficient to support their claims.  As explained above, allegations by inference are permitted within the context of a CERCLA claim.  *See See Lovejoy*, 2022 WL 17566235, at *6 (citations omitted).  In the end, this Court does not

---

[7]Trichloroetylene ("TCE") was the hazardous substance at issue in **White**. *See id.* at 170.

believe that plaintiffs are required to plead specific detail as to the mechanism of release, but there must be some allegations that link the defendant's operations with the hazardous substances at issue. In other words, there must be a basis that the hazardous substance *could* have come from the defendant.

In light of this Court's findings above, if they choose to do so, plaintiffs shall amend their Complaint within **thirty (30) days** of the entrance of this Order.

## IV.    Supplemental Jurisdiction / Common Law Claims

With plaintiffs' CERCLA claims having been dismissed by this Court against the aforementioned defendants, the only remaining claims are plaintiffs' state law tort claims. Notably, the stated basis for this Court's jurisdiction over these claims is supplemental jurisdiction. [Doc. 1 at ¶ 181 (citing 28 U.S.C. § 1367)]. Because the federal claims against these defendants have been dismissed, this Court has discretion to decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claims. 28 U.S.C. § 1367(c)(3).

Because all dismissals in this case thus far have been without prejudice and amendment of the Complaint or selection of a new forum by plaintiffs are possible, this Court finds the more prudent and economic course of action at this juncture is to decline to retain jurisdiction over plaintiffs' state law claims asserted against these defendants, as any such effort may be rendered moot shortly thereafter. Accordingly, the Complaint, as a whole, is **DISMISSED WITHOUT PREJUDICE** as to the moving defendants.

20

## CONCLUSION

Therefore, for the foregoing reasons, Chrome Deposit Corporation's Motion to Dismiss [**Doc. 108**] is **GRANTED**.  The Complaint is hereby **DISMISSED WITHOUT PREJUDICE** as to defendant Chrome Deposit.

In light of the above, the other pending Motions to Dismiss [**Docs. 116, 129, 186, 188**] are hereby **GRANTED** with respect to plaintiffs' CERCLA claims. To the extent any of these Motions alternatively request a more definite statement, they are **DENIED AS MOOT**.

Because this Court declines to retain supplemental jurisdiction over plaintiffs' remaining state law claims, the Complaint [**Doc. 1**] is **DISMISSED WITHOUT PREJUDICE** with regard to defendants (1) Chrome Deposit Corporation; (2) Ergon-West Virginia, Inc.; (3) Illinois Tool Works, Inc. (4) Ball Corporation; (5) Sonoco Products Company and (6) Messer LLC.

Plaintiffs shall have **thirty (30) days** from the entrance of this Order to amend their Complaint.

Finally, because defendant Seaforth Mineral & Ore Company, Inc. was voluntarily dismissed by plaintiffs [**Docs. 194 &196**], its pending Motion to Dismiss [**Doc. 154**] is **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

DATED: February **10**, 2026.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE